UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TYLLA PENNINGTON, et al., ) | |
| ) | |
| ) | |
| Plaintiffs, ) | Case No.  1:23 CV 195 ACL |
| ) | |
| vs. ) | |
| ) | |
| CARL HEFNER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs Tylla Pennington, Bryan Pennington and their four minor children E.P., B.P.1, B.P.2, and S.P. (collectively "Pennington Family") filed this action against the following Defendants: Carl Hefner; Stoddard County, Missouri; Rodger Seal; and Travis Maddox.  Plaintiffs allege multiple violations of federal law under 42 U.S.C. § 1983, and a Missouri common law conversion claim, related to the death by shooting of the Pennington Family dog by Defendant Seal.

Presently pending before the Court is Defendants Carl Hefner and Stoddard County, Missouri's Motion to Dismiss Plaintiffs' Complaint.  (Doc. 24.)  The motion is fully briefed and ready for disposition.

# BACKGROUND[1]

At all relevant times, the Pennington Family resided in an unincorporated rural area within the boundaries of Stoddard County, Missouri. Defendant Carl Hefner is the elected Sheriff of Stoddard County and an employee of Defendant Stoddard County. Defendants Rodger Seal and Travis Maddox were, at all relevant times, Missouri certified and sworn peace officers and employees of Stoddard County and Sheriff Hefner. Stoddard County has not enacted any ordinance regulating the responsibilities of owners to control their pets, such as a "leash law."

Prior to August 27, 2023, the Pennington Family owned and cared for a nine-year-old Labrador mix-breed dog named Parker. Parker lived at the Pennington Family's home for more than eight years and was considered a member of their family. Plaintiffs state that Parker was a "gentle loving dog and never showed aggression to any person." (Doc. 1 at p. 5.)

On August 27, 2023, Parker wandered off from the Pennington Family's property during a storm and was discovered by Hillary Mayberry on the porch of her home located approximately one mile away. Ms. Mayberry did not know who Parker's owners were, so she posted on social media and then called the Stoddard County Sherriff's Office. Defendant Rodger Seal responded to Ms. Mayberry's home. He took Parker, and placed Parker in his marked patrol vehicle. At the instruction of Seal's supervising officer, Defendant Maddox, Seal drove Parker to the Otter Slough Conservation Area that is owned by the Missouri Department of Conservation. Seal opened a door to his patrol vehicle, letting Parker jump out of the vehicle. Parker ran up and down a ditch bank several times. At the instruction of Maddox, Seal then shot Parker with his service pistol. Parker did not die immediately, and instead was dragged on the

---

[1] For purposes of this motion, the Court takes the factual allegations in the Complaint (Doc. 1) to be true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

ground by Seal for approximately eight minutes before Seal shot Parker again.  After the second shot killed Parker, Seal threw the body in a ditch.

Plaintiffs allege that Seal violated Missouri law and committed the felony of Animal Abuse in that Seal intentionally or purposely killed Parker in a manner not allowed by law to consciously inflict torture while Parker was alive.

Stoddard County and Sheriff Hefner have a written policy—Chapter 9 § 1.1 of the Stoddard County Sheriff's Office Policy Manual ("Policy")—to allow a deputy to discharge a firearm to "kill a dangerous, diseased or incapacitated animal." (Doc. 1 at p. 7.)  Plaintiffs state that Seal cannot articulate any behavior by Parker that would indicate that Parker was dangerous, diseased, or incapacitated.  They further claim that Defendant Stoddard County has an unwritten policy, pattern, and practice of regularly killing dogs and disposing of them in the Otter Slough Conservation Area or other rural locations.

The Complaint asserts the following claims: (1) unlawful seizure in violation of the Fourth and Fourteenth Amendments under § 1983 against Defendant Seal; (2) unlawful violation of the Fourth and Fourteenth amendments under § 1983 against Defendants Hefner and Maddox for failure to supervise and/or intervene; (3) unlawful seizure in violation of the Fourth and Fourteenth Amendments under § 1983 against Defendant Stoddard County based on an official policy; (4) unlawful seizure in violation of the Fourth and Fourteenth Amendments under § 1983 against Defendant Stoddard County based on an unlawful practice or custom; (5) unlawful seizure in violation of the Fourth and Fourteenth Amendments under § 1983 against Defendant Stoddard County based on a policy of failure to train; and (6) conversion under Missouri common law against Defendant Seal.

Defendants Carl Hefner and Stoddard County move to dismiss Plaintiffs' Complaint against them for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Defendants argue that there are no facts that support a claim under *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) against Stoddard County or Hefner for an unconstitutional official policy, practice, or custom, or failure to train or supervise, nor are there any facts pled that support a claim against Hefner for failure to intervene. Plaintiffs oppose the motion.

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). The facts alleged must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id*. at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions, however.  *Iqbal,* 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations.  *Id.*

## DISCUSSION

As previously noted, Defendants argue that there are no facts that support a claim under *Monell* against Stoddard County or Hefner for an unconstitutional official policy, practice, or custom, or failure to train or supervise.  They also argue that Plaintiffs have failed to plead facts that support a claim against Hefner for failure to intervene.  The undersigned will discuss these claims in turn.

**A.  *Monell* claims against Defendant Stoddard County (Counts III, IV, and V)**

A municipality is not liable under § 1983 for the acts and omissions of their employees.  *Monell*, 436 U.S. at 690-91; *Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1214 (8th Cir. 2013).  Rather, a municipality is only liable for "their own illegal acts."  *Pembaur v Cincinnati*, 475 U.S. 469, 479 (1986).  To state a claim for relief against a local government under section 1983, *Monell* requires a plaintiff plead a deprivation of federal constitutional or statutory rights caused by (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise.  *Atkinson*, 709 F.3d at 1214; *Corwin v. City of Independence*, 829 F.3d 695 (8th Cir. 2016).

Plaintiffs must demonstrate that it was the actions of the County itself, not its employees who caused the alleged injury.  *Teague v. St. Charles County*, 708 F. Supp.2d 935, 939-940 (E.D. Mo. 2010).  Liability for a municipality occurs only when "execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under §

1983." *Monell*, 436 U.S. at 694. The policy or practice itself must be the moving force behind the constitutional violation. *See City of Canton v Harris*, 489 U.S. 378, 389 (1989).

    **1. Official Policy (Count III)**

"Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin*, 829 F.3d at 700. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992). A plaintiff does not need to specifically plead the existence of an unconstitutional policy. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, a plaintiff must allege facts supporting the proposition that an unconstitutional policy exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Stoddard County is liable for its policy if the policy itself violates federal law, or if, lawful on its face, it nevertheless "led an employee to violate a plaintiff's rights." *See Pietrafeso v. Lawrence Cty., S.D.*, 452 F.3d 978, 982 (8th Cir. 2006) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). A policy is itself unconstitutional if it "affirmatively sanction[s]" unconstitutional actions or "a constitutional violation flows directly from" the policy. *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 389 (8th Cir. 2007). But where on its face lawful, a plaintiff must provide evidence "that the county's decision to maintain the policy was made with deliberate indifference to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009). Deliberate indifference is established where the policymaker "had notice of an alleged inadequacy in [its] policy" or "the

policy's alleged inadequacy was so patently obvious that the [policymaker] should have known that a constitutional violation was inevitable." *Moyle*, 571 F.3d at 819.

Count III alleges that the misconduct of the individual Defendants was authorized by and undertaken pursuant to the official policy of the Stoddard County Sheriff's Department. Plaintiffs state that the Policy allows an officer to discharge his firearm to kill a "dangerous, diseased or incapacitated animal" but does not define those terms and "gives no directive as to who is authorized to make the determination if those terms are present, what those terms mean and gives no direction how the killing should be done." (Doc. 1 at 13.)  They allege that the Policy has no requirement that a deputy make an effort to ascertain the identity or notify any owner of an animal prior to killing it.  Plaintiffs further state that the individual Defendants' actions were investigated by the Stoddard County Sheriff's Office and subsequently found that Defendant Seal "did not act appropriately during the performance of his duties," but no finding was made that Seal violated any stated policy of Defendant Stoddard County.  (Doc. 1 at 15, quoting Doc. 1-1.)  Plaintiffs allege that, by implication, the actions of Defendant Seal were found to be in compliance with the policies and practices of Defendants Stoddard County and Sheriff Hefner.

Defendants argue that the Complaint does not allege any facts supporting Plaintiffs' claim that the Policy was unconstitutional or resulted in an inherent deprivation of a constitutional right.  Defendants contend that the Policy allowing deputies to use their discretion as to whether and how to use force is not unconstitutional, and Plaintiffs' allegations that the Policy should have been more clearly defined are merely conclusory statements not entitled to the assumption of truth.

Plaintiffs respond that the Policy is unconstitutional on its face, in that it authorizes and condones unreasonable seizures of citizens' property with no safeguards. For example, Plaintiffs state that the Policy does not require that the owners be contacted or wait a period of time for the owners to contact the Sheriff's Office prior to killing the animal. Plaintiffs argue that the Policy authorizes an employee to kill a dog in circumstances where it does not present a danger but where an employee simply does not "want to deal with a lost dog or attempt to find its owners." (Doc. 27 at p. 11.) In such a case, Plaintiffs argue that the employee could simply say that "the dog was incapacitated because the term is undefined." *Id.* Plaintiffs further argue that the Policy is unconstitutionally vague and violates Due Process.

Defendants reply that Plaintiffs' arguments regarding Due Process and constitutional vagueness are not applicable to the internal policy of the Sheriff's Department and do not render the Policy unconstitutional for the purpose of *Monell* liability.

A dog qualifies as property and killing a dog qualifies as a seizure under the Fourth Amendment. *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006). The Eighth Circuit has held that an officer who kills a "family pet" that "presented no danger" when "non-lethal methods of capture would have been successful" may be liable for committing an unreasonable seizure. *Andrews*, 454 F.3d at 918. But an officer is entitled to seize an animal (including by killing it) if the officer "faced an imminent danger," *LeMay v. Mays*, 18 F.4th 283, 287 (8th Cir. 2021), and an officer faces imminent danger if a dog "advanced on or acted aggressively toward" him or other officers. *Bailey v. Schmidt*, 239 Fed. App'x 306, 308 (8th Cir. 2007).

The undersigned finds that Plaintiffs have stated a plausible claim that the Policy caused a constitutional violation. The Policy, on its face, permits deputies to not just use force but *kill*

any "dangerous, diseased or incapacitated animal." Because the terms "dangerous," "diseased," and "incapacitated," are undefined and no other safeguards are provided, the Policy can be construed to permit an unreasonable seizure. Plaintiffs' argument is buttressed by the findings of Defendant Hefner that Defendant Seal did not violate any department policy when he shot Parker in the way described in the Complaint and for which he was terminated. To this extent, Plaintiffs have stated a plausible claim of an official policy that is violative of the Fourth Amendment under Eighth Circuit precedent. *See Andrews*, 454 F.3d at 918.

Defendants rely upon *Dick v. Watonwan Cnty.*, 738 F.2d 939, 942 (8th Cir. 1984), for the proposition that providing employees discretionary authority, even if the judgment turns out to be wrong, does not render the policy unconstitutional. In *Dick*, the policy at issue was "simply that its officers should use their own discretion to decide if facts coming to their attention were serious enough to justify taking a case to the County Attorney." *Id*. Here, while employees of Stoddard County have the discretion to determine whether to discharge their weapon, the Policy goes beyond providing discretion to officers and lists circumstances in which it is permissible to kill an animal. Plaintiffs argue that killing a family pet under some of these circumstances is violative of a pet owner's Fourth Amendment rights, and that the Policy was therefore the driving force of the constitutional violation. As such, the instant case is distinguishable from *Dick*.

Because the undersigned has found that Plaintiffs state a plausible claim of an official policy violating their constitutional rights, Plaintiffs additional arguments in support of this claim regarding vagueness and due process will not be considered.

**2.  Practice or Custom (Count IV)**

Defendants next argue that the Complaint does not assert facts to support the existence of

a continuing or widespread pattern of unconstitutional conduct or that the custom was the moving force behind Defendant Seal's actions.

    Plaintiffs' response consists of the following paragraph:

> Defendants claim the Complaint does not assert facts to support an inference that an alleged custom was the moving force behind Defendant Seal's actions, however the facts alleged by Plaintiff show a reasonable inference that the standard operating procedure and custom of Defendants caused Seal and Maddox to violate Missouri Law because they were acting in accordance with the practice and custom ¶¶ 25-36, 67, 68.  In further support of this inference, Defendant Hefner's investigation found that Seal's actions did not violate the standard operating procedure, practice or custom of his department (see ¶¶ 47, 59, 69 and Exhibit A to doc. 1).

(Doc. 27 at 13.)

  "Governmental liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the [entity] as to constitute a 'custom or usage' with the force of law." *A.J. ex rel. Dixon v. Tanksley,* No. 4:13–CV–1514 CAS, 2014 WL 1648790, at *7 (E.D. Mo. Apr. 24, 2014), (quoting *McGautha v. Jackson Cnty., Mo., Collections Dep't,* 36 F.3d 53, 56 (8th Cir. 1994)).  "[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." *Id. (quoting Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 634 (8th Cir. 2009)).

    Plaintiffs have not alleged any facts to support this theory of liability.  They have not identified any other transgressions that have occurred, nor do they state how Stoddard County addressed or failed to address any other transgressions.  The sections of the Complaint cited by Plaintiffs in their Response either set out the actions of Defendant Seal in this case only or set forth legal conclusions.  For example, Plaintiffs state, in relevant part, that the misconduct of Defendants:

> was authorized by and undertaken pursuant to a practice and custom that was so widespread and well-settled as to constitute a standard operating procedure of [Defendants] in that: (a) [ ] upon information and belief, it is the standard operating practice and procedure of [Defendants] to routinely shoot dogs, in a manner similar to the shooting of Parker described herein, without conducting any fact-specific analysis and/or regard for the condition of the animal, without obtaining the identification or notification from the owners of the animal and disposal of the animal's carcass in a rural remote location...

(Doc. 1 at ¶ 67(a).)

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Here, Plaintiffs merely recite the elements of an unlawful practice or custom claim with no factual basis for holding it liable.

Thus, Count IV fails to state a plausible claim for relief and will be dismissed.

### 3. Failure to Train (Count V)

Defendants argue that the Complaint does not provide any factual allegations about the training that Defendants provided or failed to provide to Defendant Seal, does not include any facts about Stoddard County's training programs, and does not include any factual patterns of unconstitutional conduct.

Plaintiffs respond that they have sufficiently alleged the indifference of Defendants and that no training at all was ever provided by Defendants.

To state a claim under § 1983 for a failure to train, Plaintiffs must plead: (1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury. *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012). A failure to train

may serve as the basis for § 1983 liability where "the failure to train amounts to deliberate indifference." *Canton*, 489 U.S. at 388.

Much like their unlawful practice or custom claim, Plaintiffs merely assert legal conclusions without any supporting facts. For example, one of the allegations in the Complaint cited by Plaintiffs provides that Defendants' training program regarding police interactions with canines and other family pets "was non-existent, inadequate and/or failed to provide Defendant Stoddard county's officers and employees the necessary knowledge and skills to carry out their duties." (Doc. 1 at 20, ¶ 77.) The Complaint alleges that, in failing to properly train its officers and employees, Defendants "acted with deliberate indifference to the fact that its failure to provide such training would result in the killings of family pets and thereby deprivations of the constitutional rights of the citizenry." *Id.* at ¶ 79. Apart from these conclusory statements, Plaintiffs provide no allegations to support their claim that Defendants failed to adequately train its employees. Accordingly, Count V is dismissed.

### B.  Failure to Intervene Claim against Defendant Hefner (Count II)

Defendants argue that Plaintiffs do not provide facts to state a claim against Defendant Hefner for failing to intervene to prevent Defendant Seal from killing Parker. Specifically, Defendants contend that Count II does not contain facts that Hefner observed or had reason to know that excessive force would be or was being used by Defendant Seal. Instead, Defendants contend that the Complaint supports that Hefner became aware of Defendant Seal's actions only through an investigation *after* the incident occurred.

Plaintiffs respond that "sufficient facts are alleged in ¶¶ 45, 49, 51, 57, 59, 65, 67, 78-80 (Doc. 1) to give rise to the inference of Hefner's opportunity to intervene and his subsequent failure to intervene." (Doc. 27 at 15.)

A police officer may be liable for failure to intervene to prevent the use of excessive force when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir. 2009) (citation omitted).

Plaintiffs' claim fails for multiple reasons.  First, Plaintiffs offer no legal authority to support the existence of a law enforcement officer's duty to intervene to prevent an unreasonable seizure of property.  In fact, the Eighth Circuit has declined to extend a duty to intervene to prevent constitutional violations other than for violations of excessive force.  *See Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013) ("As an initial matter, we recently held that, outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations.").

In addition, the Complaint does not include any factual allegations to establish either prong of a claim for failure to intervene.  Plaintiffs have not alleged that Hefner knew or had reason to know that unconstitutional violations were occurring.  As Defendants note, the pleadings suggest that Hefner only learned of the alleged unconstitutional violation through an investigation conducted *after* the incident.  The Complaint also does not allege facts showing that Hefner had the opportunity to intervene to prevent the constitutional violation from occurring.  Instead, the Complaint contains only conclusory allegations.  For example, Plaintiffs allege that Hefner "had reasonable opportunity to intervene to prevent the actions described herein, including but not limited to by raising objections or orders to Defendant Seal preventing the killing of Parker and the manner in which Parker was to be executed." (Doc. 1 at ¶ 49.)

The Court will therefore grant Defendants' motion to dismiss Count II for failure to state a claim upon which relief can be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. 24) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Count II, Count IV, and Count V of Plaintiffs' Complaint are **dismissed.**

Dated this 17th day of May, 2024.

s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE